**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK**

BJB Limited,

                Plaintiff,

     - against-

iStar Jewelry LLC, Yelnats, Inc., previously
Stanley Creations, Inc., Brian Roth, an
individual, Gary McMullan, an individual,
Kohl's Corporation, Kohl's Department Stores,
Inc., Sears, Roebuck & Co., Sears Holdings
Management Corporation, Sears Brands,
L.L.C., Kmart Operations LLC, Kmart
Corporation, and John Does 1-5,

                Defendants.

**COMPLAINT**

Civil Action No. 19-cv-03748
ECF Case

Jury Trial Demanded

This is an action for trademark infringement and counterfeiting of Plaintiff's federally registered trademark in connection with jewelry products not sourced from Plaintiff and for breach of an Exclusive Distributorship Agreement pertaining to those products. Plaintiff BJB Limited (hereinafter "Plaintiff" or "BJB") asserts on knowledge as to itself and otherwise on information and belief as follows against defendants iStar Jewelry LLC (hereinafter "iStar"), Yelnats, Inc., previously Stanley Creations, Inc., Brian Roth (hereinafter "Roth"), Gary McMullan (hereinafter "McMullan"), Kohl's Corporation (hereinafter "Kohl's"), Kohl's Department Stores, Inc. (hereinafter "KDS"), Sears Roebuck & Co. (hereinafter "Sears Roebuck"), Sears Holdings Management Corporation (hereinafter "Sears Holdings"), Sears Brands, L.L.C. (hereinafter "Sears Brands"), Kmart Operations LLC (hereinafter "Kmart"), Kmart Corporation (hereinafter "Kmart Corp"), and John Does 1-5. (iStar, Stanley Creations, Roth, McMullan, Kohl's, KDS, Sears, Sears Holdings, Sears Brands, Kmart, Kmart Co., and John Does 1-5 collectively hereinafter "Defendants"):

## JURISDICTION AND VENUE

1.      This action arises under the trademark laws of the United States, the Lanham Act of the United States, 15 U.S.C. § 1051 et seq., and under the statutory and common laws of the State of Pennsylvania.  Subject matter jurisdiction is conferred on this Court under 15 U.S.C. §§ 1121 and 1125 and 28 U.S.C. §§ 1331, 1338 and 1367 of the Lanham Act, as well as the court's pendent jurisdiction.

2.      This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a)(2) in that BJB is a citizen of a foreign state and each of the Defendants are domestic entities or citizens of the United States.  The amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

3.      Defendants are all doing business in the State of New York and in this judicial district.  Defendants have each committed one or more tortious acts giving rise to the allegations of this Complaint in New York and thus they also transact business in New York.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.  Defendants, themselves and through their officers, agents, and/or employees transact or are doing business in this District, including soliciting business in and shipping goods into this district and deriving substantial revenue from intrastate and interstate commerce which has an effect in this district.

## THE PARTIES

5.      BJB is a private limited liability company organized and existing under the laws of the United Kingdom with an address at 14 Kirby Street, London, United Kingdom EC1N8TS.

6.      Stanley Creations, Inc., by change of name now Yelnats, Inc., is a corporation organized and existing under the laws of Pennsylvania with a principal place of business at 1414 Willow Avenue, Melrose Park, PA 19027, and through its officers, agents, and/or employees, transacts or is doing business in this District.  Yelnats is registered as a foreign business

corporation in the state of New York and operates at 31-00 47th Avenue, Long Island City, NY 11101.

7. Stanley Creations Inc., changed its name to Yelnats, Inc., on September 12, 2016. Yelnats, Inc., is thus responsible for the prior acts of Stanley Creations, Inc., in that they are one and the same entity, but for the name change. Indeed, Stanley Creations, Inc., and Yelnats, Inc., employ the same officers including defendant Roth (Vice-President) and defendant McMullan (President), all of whom are still listed on the www.StanleyCreations.com/contact page despite the change of name. Stanley Creations, Inc., now Yelnats, Inc., are hereinafter referred to as "SC" since most of the relevant conduct complained of in the Complaint pertaining to Stanley Creations, Inc., occurred prior to the name change and to SC's asset transfer to iStar.

8. iStar is a New Jersey corporation with its principal place of business at 34 Maple Avenue, Pine Brook, NJ 07058. iStar is registered as a foreign limited liability company in the State of New York and operates at 31-00 47th Avenue, Long Island City, NY 11101. iStar trades and/or does business as "Stanley Creations." iStar and SC are collectively referred to hereinafter as "Distributor."

9. Defendant Roth is an individual having a business address of 31-00 47th Avenue, Long Island City, NY 11101. He was the Vice President of Stanley Creations, Inc., and currently holds said position at Yelnats, Inc. Roth is also an officer of iStar. Roth has an ownership interest in SC/Yelnats and in iStar. Roth co-manages, controls, and operates the activities of SC and of iStar. SC and iStar are so dominated and controlled by Roth that said individual and SC and iStar are interchangeable with one another.

10. Defendant McMullan is an individual having a business address of 1414 Willow Avenue, Melrose Park, PA 19027. He was the President of Stanley Creations, Inc., and currently holds said position at Yelnats, Inc. McMullan is also an officer of iStar. McMullan has an

ownership interest in SC and in iStar.  McMullan co-manages, controls, and operates the activities of SC and of iStar.  SC and iStar are so dominated and controlled by McMullan that said individual and SC and iStar are interchangeable with one another.

11.     Kohl's and KDS are separate corporations both organized and existing under the laws of Wisconsin with a principal place of business at N56 W17000 Ridgewood Drive, Menomonee Falls, Wisconsin 53051.  Kohl's and KDS shall together be referred to as the "Kohl's Defendants."

12.     Sears is a corporation organized and existing under the laws of New York with its offices and principal place of business located at 3333 Beverly Road, Hoffman Estates, Illinois 60179.

13.     Sears Holdings is a corporation organized and existing under the laws of Delaware with its offices and principal place of business located at 3333 Beverly Road, Hoffman Estates, Illinois 6017. Sears Holdings is the parent company of Kmart Operations and Sears Brands.

14.     Sears Brands is a limited liability company organized and existing under the laws of Illinois, with a place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179, and through its officers, agents and/or employees, transact or is doing business in this District.  Sears Brands is a wholly-owned subsidiary of Sears Holdings.  Sears, Sears Holdings, and Sears Brands are collectively referred to as the "Sears Defendants."

15.     Kmart is a limited liability company organized and existing under the laws of Delaware, with a place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179. Kmart is a wholly-owned subsidiary of Sears Holdings and operates a discount "big box" department store chain with locations throughout the State of New York and the United States, and an e-commerce website located at the domain name www.kmart.com.

16.     Kmart Corp is a corporation organized and existing under the laws of Michigan with a place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.  Kmart Corp operates a chain of approximately 1,077 retail stores that sell a wide variety of merchandise, including home appliances, consumer electronics, apparel, pharmacy items, and jewelry.  Kmart and Kmart Corp are together referred to as the "Kmart Defendants."  The Kohl's Defendants, Sears Defendants, and Kmart Defendants are collectively referred herein as the "Retail Defendants."

17.     There may be other persons who are involved in the infringement of Plaintiff's rights and hereby sues them by fictitious names John Does 1 through 5.  Plaintiff has yet to confirm the true identities and acts of participation of Does 1 through 5, inclusive, and therefore must now sue them by such fictitious names.  Plaintiff is informed and believes that each of the defendants designated as a Doe is liable in some manner for the acts and omissions, damages, and injuries of which Plaintiff alleges in this Complaint.  Plaintiff will seek to amend the Complaint to state the true identities of Does 1 through 5 when ascertained.

## FACTUAL ALLEGATIONS

### BJB's Trademarks

18.     BJB is a wholesaler and supplier of jewelry and has been in business and a leading force in the jewelry industry since 1976.

19.     BJB adopted the mark GOLD 'N' ICE in the United States at least as of June 1, 2007 for jewelry.  BJB has common law rights in the mark, and is the owner of all rights, title, and interest in and to the mark GOLD 'N' ICE for jewelry.

20.     BJB obtained a federal trademark registration in the United States Patent and Trademark Office ("USPTO") of the mark GOLD 'N' ICE, U.S. Registration No. 3,334,264, on November 13, 2007 (the "GOLD 'N' ICE Registration").  The goods specified in said

registration are "jewelry combining gold and crystals."   A copy of the GOLD 'N' ICE Registration is attached hereto as **Exhibit A**.

21.     Throughout essentially the entirety of the relevant time period of Defendants' violative acts complained of herein, BJB's GOLD 'N' ICE Registration was valid, subsisting, and in full force and effect and constituted prima facie evidence of the validity of the mark.

22.     On July 23, 2018, BJB's GOLD 'N' ICE Registration was cancelled by the USPTO because, in the context of seeking the renewal of the GOLD 'N' ICE Registration, BJB inadvertently failed to respond to an office action which sought a simple clarification regarding if BJB was a limited liability company or a corporation.

23.     On June 25, 2019, BJB filed an application to replace the previously existing GOLD 'N' ICE Registration, and said application was assigned Serial No. 88/487,527.

24.     BJB also adopted a stylized version of its mark GOLD 'N' ICE shown below:



(hereinafter "GOLD 'N' ICE (Stylized)") in the United States on or before June 1, 2007 for jewelry.  BJB has common law rights in the mark and is the owner of all right, title, and interest in and to the GOLD 'N' ICE (Stylized) for jewelry.

25.     BJB obtained a federal trademark registration in the United States Patent and Trademark Office of the GOLD 'N' ICE (Stylized), U.S. Registration No. 3,334,295, on November 13, 2007 (the "GOLD 'N' ICE (Stylized) Registration.")  The goods specified in said registration are "jewelry combining gold and crystals."  A copy of the GOLD 'N' ICE (Stylized) Registration is attached hereto as **Exhibit B**.

26.     BJB's GOLD 'N' ICE (Stylized) Registration is valid, subsisting, and in full force and effect and constitutes prima facie evidence of the validity of the mark.

27.     BJB's GOLD 'N' ICE (Stylized) Registration has become incontestable pursuant to 15 U.S.C. § 1065.

28.     The mark GOLD 'N' ICE and the GOLD 'N' ICE (Stylized) are collectively referred to herein as the "GOLD 'N' ICE Marks."

**Exclusive Distributorship Agreement**

29.     On or about May 2, 2008, BJB entered into an Exclusive Distributorship Agreement with SC (hereinafter the "Distributorship Agreement") pertaining to the distribution of jewelry branded with the GOLD 'N' ICE Marks.   The true and correct copy of the Distributorship Agreement is attached hereto as **Exhibit C** and made a part hereof.

30.     Defendant Roth, as Vice President of SC, executed the Distributorship Agreement on behalf of SC.

31.     In sum and substance, the Distributorship Agreement gave SC the exclusive rights to distribute and sell, under the GOLD 'N' ICE Marks, jewelry products supplied by BJB to SC/Yelnats (hereinafter "Branded Product") to retailers throughout the United States and Canada

32.     Section 1 of the Distributorship Agreement titled "Mutual Exclusivity" states:

BJB agrees to supply the Product and the Brand to SC exclusively in the United States and exclusively Canada for resale to all major Canadian retailers that have a United States presence (i.e. Walmart, Sears, Zales).

By this term, BJB agreed not to sell Branded Product to others in these territories.

33.     Section 1 of the Distributorship Agreement further states:

**SC agrees to purchase the Product exclusively from BJB.  SC shall not promote, manufacture, market, sell, distribute, license or supply, whether on its own account or on behalf of or in conjunction with any other company or person, the Product, unless that Product is supplied by BJB.**

(emphasis added).

This provision of the Distributorship Agreement is self-explanatory.

34. Significantly, Section 1 of the Distributorship Agreement plainly explains that:

All Product originating from Other Suppliers may not be sold or marketed by SC under the Brand **without the prior written consent of BJB**.

(emphasis added).

35. Further, Section 5 of the Distributorship Agreement reiterates that:

**SC acknowledges that the Brand belongs to BJB and will not use this in any way without the prior permission of BJB**.

(emphasis added).

36. Thus, pursuant to the Distributorship Agreement, BJB was to exclusively supply its GOLD 'N' ICE jewelry products to SC and SC was to exclusively distribute and sell the Branded Products to various retailers including the Retail Defendants throughout the United States and Canada.

<u>**Defendants' Violative Acts**</u>

**SC Adopted the Trademark STERLING 'N' ICE to Compete with the Sale of**
**Branded Product and thereby Destroyed BJB's Goodwill in its GOLD 'N' ICE Marks**

37. On April 14, 2011, unbeknownst to BJB and seeking to benefit from the goodwill and reputation of BJB's GOLD 'N' ICE Marks, SC filed a U.S. Trademark Application to register the mark STERLING 'N' ICE (the "STERLING 'N' ICE Mark") in International Class 14 for "crystal jewelry set in sterling silver" under an intent-to-use basis. The application was accorded Serial No. 85/295,050

38. On June 9, 2011, the Examining Attorney refused to register the mark because the mark was likely to be confused with BJB's GOLD 'N' ICE Marks. To overcome the refusal, SC sought and obtained, under false pretenses, BJB's consent to register its STERLING 'N' ICE Mark.

**A Consent to Registration Agreement was Fraudulently
Procured and Obtained by SC under False Pretenses**

39.     Shortly after the office action was issued, SC sent BJB a "consent agreement" for BJB to sign which SC would submit to obviate the USPTO refusal to allow the STERLING 'N' ICE Mark to register in the name of SC.

40.     In the context of procuring BJB's signature on the consent agreement, SC and McMullan specifically made representations to BJB that the products to be sold under the STERLING 'N' ICE mark would be "casted silver" with crystal with "larger more glitzy styles" such as "cats, frogs, and other critters."   Moreover, McMullan informed BJB that Stanley Creations would likely be using a "very generic logo" to further convince BJB.    These false representations were made in order to convince BJB's representative to sign the consent agreement.

41.     SC and McMullan not only misrepresented the nature of the intended products on which the STERLING 'N' ICE Mark would be used and the differences to the appearance of the logo or stylized letters to be used, they also advised that the trade dress of the packaging in which STERLING 'N' ICE branded products would be sold would be different.  They did this in order to convince BJB to sign the consent agreement so as to allow SC to obtain a U.S. trademark registration for the STERLING 'N' ICE Mark.   BJB reasonably relied on the misrepresentations in agreeing to execute the consent agreement.

42.     On July 21, 2011, SC filed a response to the office action. See **Exhibit D**.  The response to the office action included a consent agreement and consent to registration which SC had BJB execute (the "Consent Agreement").  See **Exhibit E**.

43.     By submitting the Consent Agreement to the USPTO, SC and McMullan made misrepresentations to the Examining Attorney and the USPTO regarding the nature of its

planned activities under the STERLING 'N' ICE Mark in order to convince the USPTO that the STERLING 'N' ICE Mark and the GOLD 'N' ICE Marks could coexist in the market in the name of separate owners without market confusion as to source.   Specifically, the Consent Agreement provides the following relevant terms:

> The Parties further agree that they will not use the other's mark whatsoever, not their own mark in any trade dress that is substantially similar to that first used by the other.   The parties acknowledge the other's respective trademark rights and agree that there is no conflict or likelihood of confusion between their respective uses of their marks based on, among other factors:
>
> (i)  the differences between the marks themselves;
> (ii) the differences between and prominent use of the parties' respective house marks;
> (iii) the differences between and prominent use of the parties' respective trade dresses;
> (iv) the differences between the geographic areas in which the parties' respective services are provided; and
> (v) the sophistication of the parties' actual and potential customers.

44.   The Examining Attorney and the USPTO reasonably relied upon these misrepresentations in allowing the STERLING 'N' ICE Mark to register.

45.   Nowhere in the prosecution of the STERLING 'N' ICE application did SC advise the USPTO that they were the exclusive distributor of products offered under the GOLD 'N' ICE mark, instead the Consent Agreement "assured" the USPTO that the "parties agreed not to use the mark of the other whatsoever"…clearly a representation which was in derogation of SC's obligations to sell GOLD 'N' ICE Branded Product under the Exclusive Distribution Agreement. Further, there would be no differences in the geographic areas of distribution or even channels of trade, as SC knew that its goods under the mark STERLING 'N' ICE were going to be sold to the very retail customers to whom they had sold the GOLD 'N' ICE Branded Products and/or GOLD 'N' ICE Infringing Goods (see infra).

46.     As such, on March 27, 2012, a registration certificate was issued to SC for the STERLING 'N' ICE Mark, Reg. No. 4,119,636.

**SC's Breach of the Consent Agreement and the False and
Deceptive Representations made to BJB and the USPTO**

47.     SC breached the Consent Agreement between it and BJB by failing to live up to the representations made therein to both BJB and to the USPTO.  Under the Consent Agreement, SC and BJB agreed that "they will not use the other's mark whatsoever, nor their own mark in any trade dress that is substantially similar to that first used by the other."

48.     In violation of the terms of the Consent Agreement and contrary to the representations made to the USPTO in that Consent Agreement, SC's jewelry box's trade dress is substantially similar to BJB's jewelry box's trade dress. Below is a side-by-side comparison of the jewelry boxes:

GOLD 'N' ICE packaging          STERLING 'N' ICE packaging

 

SC's trade dress includes the same font, style, shape, and front piece, all of which are substantially similar to the trade dress used to market the Branded Products.  BJB did not provide authorization to SC to mimic its trade dress, in fact, the Consent Agreement specifically stated that they would be distinct.

11

**The STERLING 'N' ICE Products Offered Are Nearly Identical to the Branded Products**

49.     In further breach of the Consent Agreement and the Distributorship Agreement, SC, through the Kohl's Defendants, are marketing, advertising, promoting, distributing, selling, and offering for sale substantially similar products (see side-by-side comparison below) under the STERLING 'N' ICE Mark that were previously sold under the GOLD 'N' ICE Marks and provided by BJB pursuant to the Distributorship Agreement.   A screenshot from Kohl's Defendants' website of the STERLING 'N' ICE products is attached hereto as **Exhibit F**.   Side-by-side examples SC mimicking BJB's jewelry designs are below.

BJB's GOLD 'N' ICE Products             SC's STERLING N ICE Products



50.     The aforementioned products sold under the STERLING 'N' ICE Mark may include silver, but on some items the silver is over layered with gold so as to appear to be identical to BJB's Branded Products.

51.     The use of gold overlay in the STERLING 'N' ICE brand products is in violation of the Consent Agreement and exacerbates confusion between the products offered under the STERLING 'N' ICE Mark and the GOLD 'N' ICE Brand Products.

52.     The use of gold overlay and the substantially similar if not identical designs for the SC's STERLING 'N' ICE brand is confirmation of SC intent to usurp and trade upon BJB's goodwill and reputation as well as on the value of BJB's GOLD 'N' ICE Marks with no compensation to BJB.

53.     In light of the foregoing, the Consent Agreement should be rescinded and the registration of the STERLING 'N' ICE Mark cancelled.

**The Decline in BJB's Sales of Branded Product**

54.     In and around 2012, there was also a sudden and substantial decline in the volume of Branded Product purchased by SC from BJB.  Each year, the volume of branded product purchased by Distributor from BJB became lower and lower.

55.     Representatives of SC attributed the decline in orders to the increase the price of gold, resulting in less sales of the Branded Product.  BJB reasonably relied on the representations made by the Distributor and its corporate representatives including Roth and McMullan.

56.     Furthermore, representatives of SC also attributed the decline to the lack of new and creative ideas and products in the market.  Per SC's request, BJB told SC that they had developed new, less expensive products including gold plated silver and presented these products to SC.  However, SC had no intention of distributing those products as by that time they were on their way with the sales and promotion of their completing STERLING 'N' ICE products.

57. At least since 2012 if not earlier, unbeknownst to BJB, in violation of the Distributorship Agreement and assuming BJB would never learn of same, SC purchased jewelry from third parties (the "Infringing Products") and sold the Infringing Products to the retail trade with the GOLD 'N' ICE Marks thereon, rather than buying Branded Product from BJB.

**Purchase of SC's Assets by iStar and its Continuation of the Violative Acts**

58. iStar was incorporated in New Jersey on July 24, 2015.

59. After iStar was incorporated, iStar entered into an asset purchase agreement with SC dated July 1, 2016. A bill of sale and assignment and assumption agreement was consummated on about September 1, 2016.

60. Under these agreements, SC agreed to transfer and assign, and did transfer and assign all rights, title, and interest in and to the obligations under the Distributorship Agreement between SC and BJB to iStar. iStar undertook the obligations of SC and continued the violations of the Distributorship Agreement and the infringing activities of SC.

61. Also, SC assigned all rights, title, and interest in and to the STERLING 'N' SILVER Mark through a trademark assignment executed on November 1, 2017 to iStar.

62. Subsequent to the assignment of the Distributorship Agreement, BJB abided by its obligations under the Distributorship Agreement by supplying any Branded Products that was then ordered by iStar to iStar.

63. iStar continued SC's acts of infringement by purchasing Infringing Products from third parties and selling those Infringing Products with the GOLD 'N' ICE Marks thereon.

64. BJB never provided consent to either SC or iStar to source the Infringing Products from third parties and sell and distribute such Infringing Products under the GOLD 'N' ICE Marks.

65.     BJB has been significantly damaged by first SC and then iStar's failure to purchase Branded Product from BJB, and from SC and iStar's decision to source product elsewhere, apply BJB's GOLD 'N' ICE Marks to Infringing Products without ever accounting to BJB for such sales under the GOLD 'N' ICE brand, and to boot create its own confusingly similar STERLING 'N' ICE jewelry brand to compete directly with the sales of Branded Product and/or Infringing Product.

66.     Between 2007 and 2011, sales of the BJB's GOLD 'N' ICE products to the SC averaged about $1.3 million per year.  The below chart shows BJB's net sales of orders from SC of GOLD 'N' ICE Branded Products from 2007 to date, and the precipitous drop in sales as a result of the infringing activity by the sales of Infringing Products as well as the competing sales of product under the STERLING 'N' ICE brand:

| Year | Annual Sales (USD) |
|------|--------------------|
| 2007 | 813,013.41 |
| 2008 | 1,990.077.58 |
| 2009 | 1,551,808.46 |
| 2010 | 2,274,824.31 |
| 2011 | 1,715,564.43 |
| 2012 | 618,816.80 |
| 2013 | 494,587.30 |
| 2014 | 138,580.89 |
| 2015 | 324,721.25 |
| 2016 | 78,514.17 |
| 2017 | 45,295.92 |
| 2018 | 24,879.05 |
| 2019 | 4,536.35 |

67.     As a result of SC's and iStar's breach and infringement, BJB has not had any substantial orders of their GOLD 'N' ICE Branded Products and thus has been derived of the value of those sales.

68.     As a result of the SC's and iStar's breach and infringement, BJB has been deprived of the right to approve and control the use of its GOLD 'N' ICE brand.

69.     SC and iStar have each profited from the sales of products purchased from third parties, which SC and iStar sold under the GOLD 'N' ICE brand to BJB's detriment.

70.     Section 5 of the Distributorship Agreement states:

> SC also commits to use its best endeavors to ensure against….the infringement of the brand, and that its customers only market and sell BJB Product under the Brand.

SC and its assignee iStar failed to perform these obligations of the Distributorship Agreement by themselves infringing the GOLD 'N' ICE brand and allowing their retailers to infringe the brand by selling Infringing Products to their retailers, which their retailers in turn sold to the consuming public, and by selling competing STERLING 'N' ICE branded product, which excluded BJB completely from those sales.

71.     SC and iStar are responsible for the profits of the Retail Defendants and for the profits of others to whom the Infringing Products were sold, and for BJB's lost sales.

### BJB's Discovery of the Infringement & the Fraud

72.     Around November 2018, BJB received information that the Kohl's Defendants were selling, offering for sale, and distributing the Infringing Products on their website at kohls.com and in their retail stores.  A screenshot from kohls.com is attached hereto as **Exhibit G**.

73.     Infringing Products have been and continue to be offered from sale at the website and in the retail stores of the Kohl's Defendants.

74.     Around November 2018, BJB also discovered that the Kmart Defendants were offering for sale and distributing Infringing Products on their website at kmart.com. A screenshot from kmart.com is attached hereto as **Exhibit H**.

75.     The Infringing Products have been and continue to be offered for sale at kmart.com and in Kmart retail stores.

76.     Around November 2018, BJB learned that the Sears Defendants were offering for sale and distributing Infringing Products on their website at sears.com.   A screenshot from sears.com is attached hereto as **Exhibit I**.

77.     The Infringing Products have been and continue to be offered for sale at sears.com and in Sears retail stores.

78.     Upon learning of these sales, BJB ordered samples of the Infringing Products from the Retail Defendants for its review and inspection, and determined that these products were sold to the Retail Defendants by BJB's own Distributor, specifically by iStar, in violation of the Distributorship Agreement.

79.     On or about December 13, 2018, BJB's attorney sent a letter to iStar requesting that it cease the sale of infringing product to the Retail Defendants.

80.     Pursuant to the Distributorship Agreement, SC and iStar had no right to use the GOLD 'N' ICE Marks in connection with the sale of products that are not purchased from BJB.

81.     The Distributorship Agreement recognizes BJB's ownership of the mark.

82.     SC's and iStar's appropriation of the GOLD 'N' ICE Marks is therefore knowing, willful, and deliberate, and is made with no other purpose, but to trade on and to benefit from the reputation and goodwill of the GOLD 'N' ICE Marks.

83.     SC's and iStar's activities have caused, and if allowed to continue, will continue to cause significant loss of sales to BJB by sourcing, importing, distributing, marketing, exhibiting, offering for sale, and selling the Infringing Products.

84.     SC's and iStar's activities have disparaged BJB, BJB's GOLD 'N' ICE Marks, and its products by creating a false association between the Infringing Products with BJB, and with BJB's genuine GOLD 'N' ICE Branded Products.

85.     SC's and iStar's activities have resulted in substantial profits for the Defendants to which they are not entitled.

86.     SC's and iStar's unauthorized use of BJB's GOLD 'N' ICE Marks is likely to deceive and to cause confusion and mistake.  Such unauthorized use by SC and iStar of BJB's GOLD 'N' ICE Marks has caused and will continue to cause irreparable harm and has and will continue to wrongfully damage BJB, in violation of 15 U.S.C. §§ 1114 and 1116, unless the Court enjoins all Defendants from further commission of said acts.  SC and iStar, together with the Retail Defendants have been unjustly enriched and BJB is entitled to an accounting of the profits of all of the Defendants.  The activities of Defendants have damaged BJB in an amount yet unknown.

**FIRST CLAIM OF RELIEF**
**Breach of the Distributorship Agreement**
**(SC and iStar)**

87.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

88.     The Distributorship Agreement between Plaintiff and SC, which was assigned to iStar, in an asset purchase agreement dated July 1, 2016, is a valid and binding contract governed under the laws of the Commonwealth of Pennsylvania.

89.     Defendants SC and iStar breached the Distributorship Agreement by sourcing, importing, distributing, promoting, advertising, marketing, offering for sale, and/or selling Infringing Products with the GOLD 'N' ICE Marks thereon that were not sourced by Plaintiff.

90.     Plaintiff has performed all of its obligations under the Distributorship Agreement.

91.     Plaintiff has been significantly damaged by SC's and iStar's deliberate breach.

92.     SC's and iStar's actions are willful and wonton, and to the extent that punitive damages are available, they should be awarded over and above appropriate breach of contract damages in an amount to be determined at trial.

### SECOND CLAIM FOR RELIEF
### Trademark Counterfeiting – 15 U.S.C. §§ 1114, 1116
### (SC, iStar, Roth, and McMullan)

93.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

94.     SC, iStar, Roth and McMullan have used, in connection with jewelry combining gold and crystals, spurious designations that are identical with, or substantially indistinguishable from Plaintiff's GOLD 'N' ICE Marks for which BJB held and still holds federal trademark registrations.

95.     SC, iStar, Roth, and McMullan used these spurious designations in commerce in connection with the advertising, sale, offering for sale, and/or distribution of Infringing Products for their own financial gain.

96.     Plaintiff has not authorized SC, iStar, Roth, and McMullan's use of the GOLD 'N' ICE Marks to advertise, offer for sale, sell, and/or distribute Infringing Products.

97.     At all relevant times, SC, iStar, Roth, and McMullan had actual and direct knowledge of Plaintiff's use, rights, and ownership of the GOLD 'N' ICE Marks.  SC, iStar,

Roth, and McMullan conduct is therefore willful and reflects their intent to exploit the goodwill and strong brand recognition associated with the GOLD 'N' ICE Marks.

98.    SC, iStar, Roth, and McMullan's acts as described in this Complaint constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

99.    SC, iStar, Roth, and McMullan have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

100.    SC, iStar, Roth, and McMullan's acts have caused, and will continue to cause, irreparable injury to BJB, unless restrained by this Court.

101.    SC, iStar, Roth, and McMullan have damaged and will continue to damage Plaintiff, and Plaintiff has no adequate remedy at law.

102.    In light of the foregoing, Plaintiff is entitled to and demands injunctive relief prohibiting SC, iStar, Roth, and McMullan and all those acting in concert with them from using the GOLD 'N' ICE Marks for any purpose.  Plaintiff is further entitled to recover from them all damages, including attorneys' fees, that Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by them as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

## THIRD CLAIM FOR RELIEF
### Trademark Infringement – 15 U.S.C. §§ 1114
### (All Defendants)

103.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

104.    This cause of action arises under Section 32 of the Lanham Act, as amended, 15 U.S.C. § 1114 et seq., for infringement of a federal registered mark.

105.    During the time of Defendants' violative acts, Plaintiff's GOLD 'N' ICE Registration was valid, incontestable, and in full force and effect as pleaded hereinabove.

106.    During the time of Defendants' violative acts, the GOLD'N'ICE (Stylized) Registration was valid, incontestable, and in full force and effect and remains valid, incontestable, and in full force and effect.

107.    Defendants sourced, promoted, imported, advertised, distributed, sold, and/or offered for sale Infringing Products without seeking Plaintiff's permission, authorization, license, or consent.  By sourcing, distributing, promoting, advertising, marketing, offering for sale, and/or selling Infringing Products, Defendants have used Plaintiff's federally registered GOLD 'N' ICE Marks in interstate commerce and in this Judicial District.

108.    By sourcing, importing, distributing, promoting, advertising, marketing, offering for sale, and/or selling Infringing Products, Defendants have and are likely to continue to cause confusion, mistake, or deception as to the origin of the Infringing Products, falsely conveying that the same originate from, or are endorsed or authorized by Plaintiff.

109.    Accordingly, Defendants' Infringing Products violate Plaintiff's exclusive rights in the GOLD 'N' ICE Marks and the federal registrations thereof, in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

110.    Defendants intended to confuse, mislead, or deceive the public as to the source, sponsorship, or origin of the Infringing Products, and to profit from the goodwill of the GOLD 'N' ICE Marks.

111.    By reason of Defendants' willful acts, Plaintiff has been damaged and will continue to suffer significant damage to its business and reputation unless Defendants are restrained by this Court from further infringement.

112.    Plaintiff has no adequate remedy at law.

113.    In light of the foregoing, Plaintiff is entitled to and demands injunctive relief prohibiting all Defendants from using the GOLD 'N' ICE Marks or any marks identical and/or confusingly similar thereto for any purpose, and to recover from Defendants all damages, including attorneys' fees, that Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

## FOURTH CLAIM FOR RELIEF
### Federal Unfair Competition – 15 U.S.C. §§ 1125
### (All Defendants)

114.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

115.    This cause of action arises under Section 43(a) of the Lanham Act, as amended, 15 U.S.C. §1125(a), for false designation of the origin and false description and representation/advertising.

116.    Defendants' use of the GOLD 'N' ICE Marks for Infringing Products that are not manufactured by BJB is likely to cause confusion as to the source, origin, or sponsorship of these products. The public will assume that all products bearing the GOLD 'N' ICE Marks are sourced by BJB.  Thus, the application of the GOLD 'N' ICE Marks to products not sourced by BJB is false advertising.

117.    The Defendants' actions are likely to cause confusion or mistake among the public as to the true origin, source, sponsorship or affiliation of the Infringing Products sold under the GOLD 'N' ICE Marks.

118.    Defendants' acts constitute false designation of origin, false descriptions, and false representations in commerce that the Infringing Products are those of Plaintiff, or are sponsored, approved, authorized by, or affiliated with Plaintiff.

119.    Plaintiff has no control over the quality of the Infringing Products sold by Defendants which is promoted, advertised, and sold under the GOLD 'N' ICE Marks.  As a result, Plaintiff's valuable goodwill in its GOLD 'N' ICE Marks has been significantly damaged. Because Plaintiff has no control over the quality of the Infringing Products, Plaintiff's reputation, developed over time, is put in grave risk, and Plaintiff could suffer substantial reputational harm as a consequence of Defendants' violative actions.

120.    As a result of the Defendants' misleading acts and false advertising, Plaintiff has been damaged and will continue to suffer damage as well as irreparable harm to its business and reputation unless Defendants are restrained by this Court from further infringement.

121.    Plaintiff has no adequate remedy at law for the Defendants' continued and violative acts.

122.    In light of the foregoing, Plaintiff is entitled to and demands injunctive relief prohibiting Defendants from using the GOLD 'N' ICE Marks or any marks identical and/or confusingly similar thereto for any purpose, and to recover from Defendants all damages, including attorneys' fees, that Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. § 1117(a), attorneys' fees and treble damages pursuant to 15 U.S.C. § 1117(b), and/or statutory damages pursuant to 15 U.S.C. § 1117(c).

## FIFTH CLAIM FOR RELIEF
### Rescission of Consent Agreement
### (SC, iStar, and McMullan)

123.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

124.     McMullan and SC made misrepresentations and/or omissions of material fact concerning SC's anticipated use of the STERLING 'N' ICE Mark prior to BJB signing the Consent Agreement.

125.     McMullan and SC misrepresented the type of products that the STERLING 'N' ICE Mark would be used with when it was seeking BJB's consent to enter into the Consent Agreement.

126.     McMullan and SC made misrepresentations and/or omissions regarding the branding and the trade dress of the STERLING 'N' ICE products prior to BJB entering into the Consent Agreement.

127.     McMullan and SC made the foregoing misrepresentations and/or omissions of material facts with full knowledge and expectation that BJB would rely on said representations, which were a material to BJB's decision to execute the Consent Agreement under the terms provided and to allow the STERLING 'N' ICE Mark to register in the name of SC.

128.     BJB justifiably relied on the representations made to it both correspondence and in the Consent Agreement in determining whether to execute the Consent Agreement under the terms provided and to allow the STERLING 'N' ICE Mark to register in the name of SC.

129.     If the true facts had been known, BJB would not have signed the Consent Agreement and allowed the STERLING 'N' ICE Mark to register.

130.     Therefore, BJB is entitled to an Order rescinding and voiding *ab initio* the Consent Agreement.

## SIXTH CLAIM FOR RELIEF
**Claim for Cancellation of U.S. Reg. No. 4,119,636 for STERLING 'N' ICE**
**(SC and iStar)**

131.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

132.    This is a claim for cancellation of U.S. Reg. No. 4,119,636 of the mark STERLING 'N' ICE first registered to SC and now owned by iStar. SC assigned U.S. Reg. No. 4,119,636 for the mark STERLING 'N' ICE to iStar in 2017.

133.    BJB owned U.S. Reg. No. 3,334,264 for the mark GOLD 'N' ICE, which was inadvertently abandoned in 2018, but was valid, subsisting, and in full effect during the time of SC's violative acts.

134.    BJB owns U.S. Reg. No. 3,334,295 for the GOLD 'N' ICE (Stylized) Mark, which was valid, subsisting, and in full effect during the time of SC's violative acts.

135.    As alleged herein, during prosecution of the STERLING 'N' ICE application, the USPTO refused registration of the STERLING 'N' ICE application claiming that the mark STERLING 'N' ICE was likely to be confused with both with the marks of BJB's two GOLD 'N' ICE Registrations.

136.    In view of the refusal and in an effort to overcome it, McMullan, on behalf of SC, sought BJB's consent to allow the STERLING 'N' ICE mark to be registered.

137.    In seeking the consent, McMullan made false representations to BJB that the products to be sold under the STERLING 'N' ICE mark would not be using the same trade dress as the Branded Products sold under BJB's GOLD 'N' ICE Marks, that products would have different styles, and that the products would be made of different components.    Those representations were made in order to convince BJB to sign a "Consent Agreement" which would be submitted to the USPTO to convince the USPTO that the respective owners of the

STERLING 'N' ICE and GOLD 'N' ICE themselves did not think that the marks as applied to the goods of the respective parties, would be confused as to the source of the goods. These misrepresentations were contained in the communications of SC to BJB, as well as in the Consent Agreement itself.

138.    BJB relied on these misrepresentations to its detriment when agreeing to enter into the Consent Agreement.

139.    The USPTO also relied on the misrepresentations in the Consent Agreement when it relied on the document to approve SC's application to register the mark STERLING 'N' ICE and an owner different that the owner of the mark GOLD 'N' ICE.

140.    SC, and now iStar's, use of the STERLING 'N' ICE Mark is inconsistent with and in violation with the terms of the Consent Agreement.

141.    The STERLING 'N' ICE Registration should be cancelled as it was obtained under false pretenses.  Fraud was committed on both BJB and on the USPTO.  Both BJB and the USPTO were deceived.  The USPTO would not have issued the registration to SC if the Consent Agreement had not been submitted with the terms therein.

142.    In light of the foregoing, BJB seeks cancellation of U.S. Reg. No. 4,119,636 under 15 U.S.C. § 1119.

### SEVENTH CLAIM FOR RELIEF
**Deceptive Acts and Practices Under Sections 349 and 350**
**of the New York General Business Law**
**(SC, iStar, Roth, and McMullan)**

143.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

144.    New York General Business Law, Section 349 states, in relevant part, that: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

145.    New York General Business Law, Section 350 states, in relevant part, that: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

146.    Through their distribution, advertisement, promotion, offering for sale, and sale of Infringing Products bearing marks confusingly similar to the GOLD 'N' ICE Mark, defendants SC, iStar, Roth, and McMullan have engaged in consumer-oriented conduct that has affected the public interest of New York and has resulted in injury to consumers in New York.

147.    Defendants SC, iStar, Roth, and McMullan's deceptive acts or practices, as described herein, are materially misleading. Such acts or practices have deceived or have a tendency to deceive a material segment of the public to whom these defendants have directed their marketing activities, and BJB has been injured thereby

148.    By the acts described above, defendants SC, iStar, Roth, and McMullan have willfully engaged in deceptive acts or practices in the conduct of business and furnishing goods in violation of Sections 349 and 350 of the New York General Business Law.

149.    Defendants SC, iStar, Roth, and McMullan's acts have caused, and will continue to cause irreparable injury to BJB.  BJB has no adequate remedy at law and is thus damaged in an amount not yet determined.

**EIGHTH CLAIM FOR RELIEF**
**Trademark Infringement in Violation of New York State Common Law**
**(All Defendants)**

150.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

151. BJB owns all right, title, and interest in and to the GOLD 'N' ICE Marks, including common law rights.

152. Without BJB's authorization, Defendants misappropriated BJB's GOLD 'N' ICE Marks for use in connection with Infringing Products, which are substantially indistinguishable from and confusingly similar to BJB's genuine GOLD 'N' ICE brand products.

153. Defendants also sold products under the mark STERLING 'N' ICE which infringed BJB's rights.

154. Defendants' sales of Infringing Products has caused, and, unless enjoined, will likely continue to cause consumers and the public to mistakenly conclude that the Infringing Products originate from and/or are sponsored, authorized, or endorsed by BJB.

155. Defendants' acts therefore constitute trademark infringement in violation of the common law of the State of New York.

156. Defendants have profited from their unlawful actions and were unjustly enriched to the detriment of BJB, and has caused BJB damages in an amount to be determined at trial.

157. BJB has been irreparably harmed and, unless enjoined by this Court, will continue to be irreparably harmed by the sales of the infringing products.

158. BJB has no adequate remedy at law.

## NINTH CLAIM FOR RELIEF
### Unfair Competition in Violation of New York State Common Law
### (All Defendants)

159. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

160. By the act described above, Defendants have intentionally engaged in unfair competition in violation of the common law of the State of New York.

161.     Defendants employed deceptive business tactics in their failure to account to Plaintiff.

162.     Such deceptive business tactics were to BJB's detriment.

163.     Defendants' actions were undertaken in bad faith.

164.     Defendants' acts have caused, and will continue to cause, irreparable injury to BJB.  BJB has no adequate remedy at law and is thus damaged in an amount to be determined.

**TENTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(All Defendants)**

165.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

166.     Defendants' unauthorized use of the Plaintiff's GOLD 'N' ICE Marks conferred significant monetary benefits upon Defendants by enabling them to offer Infringing Products in the marketplace which they otherwise would not have been able to offer.

167.     Defendants have been unjustly enriched at the expense of Plaintiff by virtue of their improper actions.

168.     It would be against equity and good conscience for Defendants to retain the economic benefits that they derived from their conduct.

169.     Plaintiff is entitled to disgorgement and restitution of all economic benefits that Defendants derived from their unauthorized use of the Plaintiff's GOLD 'N' ICE Marks.

170.     Plaintiff demands entry of judgment against Defendants for disgorgement and restitution in an amount to be determined at trial, along with interest thereon and Plaintiff's costs, reasonable attorney's fees, and expenses incurred in this action, and such other and further relief as the Court may deem just and proper.

## ELEVENTH CLAIM OF RELIEF
### Breach of Covenant of Good Faith and Fair Dealing
### (SC and iStar)

171.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

172.    SC and iStar had an obligation to act in good faith and deal fairly with Plaintiff when performing its obligations under the Distributorship Agreement.

173.    SC and iStar violated their obligation of good faith and fair dealing by purchasing product from third parties and using the Plaintiff's GOLD 'N' ICE Marks thereon thereby enabling them and their assigns to enjoy all of the benefits of the Distributorship Agreement without payment for Branded Products to be sold thereunder to them by Plaintiff.

174.    SC and iStar violated their obligation of good faith and fair dealing by adopting the mark STERLING 'N' ICE and placing same on product similar to BJB's products, allowing them to lower the price point of the products by using silver, but overlying the products in "gold" so that they looked identical to the BJB Branded products sold under the GOLD 'N' ICE brand.

175.    Such conduct was undertaken by SC and iStar in bad faith.

176.    In view of the foregoing, Plaintiff demands entry of judgment against SC and iStar for compensatory damages in an amount to be determined at trial, along with interest thereon and Plaintiff's costs, reasonable attorney's fees, and expenses incurred in this action, and such other and further relief as the Court may deem just and proper.

## TWELFTH CLAIM OF RELIEF
### Fraud
### (SC, iStar, Roth, and McMullan)

177.    Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

178.     SC and McMullan made misrepresentations to BJB and to the USPTO to secure a U.S. trademark registration for SC's STERLING 'N' ICE Mark.

179.     Furthermore, in correspondence with Plaintiff, SC and iStar and their corporate representatives misrepresented the reasoning for their decline in purchasing genuine GOLD 'N' ICE brand jewelry from Plaintiff, attributing such decline strictly to the increased price of gold and the lack of new and creative products and thus the unpopularity of Plaintiff's Branded Products.

180.     Roth and McMullan intentionally omitted and concealed material facts that SC and then iStar had decided to purchase or order goods from third parties and sell same with the GOLD 'N' ICE brand thereon to the Retail Defendants and other John Doe Defendants in derogation of Plaintiff's brand.

181.     SC, iStar, and their corporate representatives made these representations knowing they were false.  They further failed to state the fact that they were sourcing products from third parties and applying Plaintiff's mark thereon.

182.     SC, iStar, and their corporate representatives intended that Plaintiff rely on the misrepresentations and omissions regarding the reasons for diminished purchases; it was reasonably foreseeable that Plaintiff would rely on same to their detriment.

183.     Plaintiff reasonably relied, to its detriment, on these misrepresentations.

184.     Plaintiff has and will continue to suffer damages as a direct and proximate result of the misrepresentations.

185.     In view of the foregoing, Plaintiff demands entry of judgment against SC, iStar, and their corporate representatives for compensatory damages in an amount to be determined at trial, along with interest thereon and Plaintiff's costs, reasonable attorney's fees, and expenses incurred in this action, and such other and further relief as the Court may deem just and proper.

## THIRTEENTH CLAIM OF RELIEF
### Alter Ego Liability
### (SC, iStar, Roth, and McMullan)

186.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs as though fully set forth herein.

187.     iStar acquired SC's assets and obligations in an asset purchase agreement dated July 1, 2016 which the asset purchase agreement included but was not limited to SC's rights and obligations under the Distributorship Agreement.

188.     Since that date, iStar is thus responsible for the obligations of SC, and in fact iStar and SC are one and the same. iStar trades as "Stanley Creations."  Roth and McMullan have analogous roles at SC and at iStar.  Roth and McMullan co-managed, controlled, and operated the activities and decision-making of SC as they now do iStar.

189.     As described above, iStar is the alter ego of SC and responsible for the debts of SC, including all damages attributable to the conduct complained of in this Complaint.

190.     Under applicable law, the corporate shield as between iStar, SC, Roth and McMullan should be disregard and/or pierced, such that the aforementioned liabilities for the infringement and other violative acts committed by these parties are imposed on all of them as joint tortfeasors.

191.     In view of the foregoing, Plaintiff demands entry of judgment against SC, iStar, Roth, and McMullan for compensatory damages in an amount to be determined at trial, along with interest thereon and Plaintiff's costs, reasonable attorney's fees, and expenses incurred in this action, and such other and further relief as the Court may deem just and proper.

**WHEREFORE**, BJB respectfully prays:

A.     For a final judgment determining that:

    i.   Defendants SC and iStar breached the Distribution Agreement;

    ii.   Defendants SC, iStar, Roth, and McMullan engaged in trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114;

    iii.   All Defendants engaged in trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114;

    iv.   Defendants' acts constituted false designation of origin, false descriptions, and false representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a);

    v.   Defendants SC, iStar, Roth, and McMullan engaged in trademark counterfeiting and trademark infringement in violation of statutory and common the laws of the State of New York Law; and

    vi.   Defendants SC, iStar, Roth, and McMullan engaged in deceptive trade practices in violation of Sections 349 and 350 of the New York General Business Law;

    vii.   All Defendants engaged in trademark infringement, unfair competition, and unjust enrichment in violation of the statutory and common laws of the State of New York;

    viii.   Defendants SC and iStar breached the of covenant of good faith and fair dealing in violation of the common laws of the State of New York; and

    ix.   Defendants SC, iStar, Roth, and McMullan committed fraud and alter ego liability in violation of the common laws of the State of New York;

B.     For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. §1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a)(3), and treble damages in

the amount of a sum equal to three (3) times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally, directly or indirectly using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. §1114(1)(a);

C.      In the alternative, for an award of Defendants' profits and Plaintiff's actual damages, enhanced discretionary damages and treble damages for the willful use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods and/or the willful encouragement, enabling, facilitation, participation in and/or material contribution to such use, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods sold, offered for sale, or distributed, as the court considers just, which BJB may elect prior to the rendering of final judgment;

D.      For an award of Defendants' profits and Plaintiff's damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proved at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(c) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.      For the Court to enter an injunction permanently ordering that Defendants, their agents, servants, officers, directors, employees and all other persons in privity or acting in concert with them be enjoined and restrained from:

        i. using any reproduction, counterfeit, copy, or colorable imitation of BJB's GOLD 'N' ICE Marks to identify any products not authorized by BJB, including and not limited to the mark STERLING 'N' ICE;

        ii. engaging in any course of conduct likely to cause confusion, deception or mistake, or injure BJB's business goodwill or reputation;

     iii.  further infringing BJB's GOLD 'N' ICE Marks by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise disposing of any products not authorized by BJB bearing any simulation, reproduction, copy or colorable imitation of BJB's GOLD 'N' ICE Marks including and not limited to the mark STERLING 'N' ICE;

     iv.  directly or indirectly engaging in any other actions that constitute unfair competition with BJB; and

     v.  instructing, assisting, aiding, or abetting any other person or entity in engaging in or performing any of the activities referred to above;

F.     For an Order of the Court that the Consent Agreement is rescinded and void *ab initio*;

G.     For an Order of the Court cancelling U.S. Reg. No. 4,119,636 for STERLING 'N' ICE pursuant to 15 U.S.C. § 1119;

H.     For an order of the Court requiring that Defendants destroy any and all infringing and/or counterfeit products including but not limited to all packaging, bales, tags, advertisements, promotional materials ,and any other materials in Defendants' possession, custody or control that depict BJB's GOLD 'N' ICE Marks, or bear any marks or design that is confusingly similar or substantially similar to BJB's GOLD 'N' ICE Marks pursuant to 15 U.S.C. § 1118, including and not limited to the mark STERLING 'N' ICE;

I.     For an order from the Court requiring Defendants to provide accounting for any and all monies, profits, gains and advantages derived by Defendants from the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for

sale, and/or sale of the products bearing BJB's GOLD 'N' ICE Marks that were not sourced from BJB, including and not limited to the mark STERLING 'N' ICE;

J.      That the Court award BJB its reasonable attorney's fees pursuant to Section 35 of the Trademark Act of 1946, 15 U.S.C. § 1117 on the grounds of Defendants' knowing, willful, intentional, and/or counterfeit conduct;

K.      That the Court award BJB its costs in this litigation; and

L.      That the Court award BJB such other and further relief as the Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Trial by jury is hereby demanded as to all issues in this action so triable.

Dated:  New York, New York
        June 27, 2019

Respectfully submitted,

/s/ Marc P. Misthal
Marc P. Misthal
Maria A. Savio
Robert Feinland
Gottlieb, Rackman & Reisman P.C.
270 Madison Avenue, 8th Floor
New York, New York 10016
(T) (212) 684-3900
mmisthal@grr.com
msavio@grr.com
rfeinland@grr.com

*Attorneys for Plaintiff BJB Limited*